**CENTER TOWNHOUSE CORPORATION, John W. Schindler, Jr., Ann M. Schindler, Dennis Doordan, Marcia Rickard, Michael A. Nickol, Betty M. Nickol, Richard T. Johnson, and Jeffery A. Greco, Appellants–Plaintiffs,**

v.

**CITY OF MISHAWAKA, City of Mishawaka Parks and Recreation Board, Appellees–Defendants.**

No. 71A04–0612–CV–707.

Court of Appeals of Indiana.

March 20, 2008.

Robert J. Palmer, John H. Peddycord, May Oberfell Lorber, Mishawaka, IN, Attorneys for Appellants.

Stephen A. Studer, John Lloyd, Plews Shadley Racher & Braun LLP, South Bend, IN, Attorneys for Appellees.

Michael J. Lewinski, Seth M. Thomas, Ice Miller LLP, Indianapolis, IN, Attorneys for Amicus Curiae Indiana Association of Cities and Towns and Indiana Municipal Lawyers Association.

## OPINION

KIRSCH, Judge.

Center Townhouse Corporation ("CTC") and individual townhome owners John W. Schindler, Jr., Ann M. Schindler, Dennis Doordan, Marcia Rickard, Michael A. Nickol, Betty M. Nickol, Richard T. Johnson, and Jeffery A. Greco ("Owners") brought an inverse condemnation action against the City of Mishawaka and its Parks and Recreation Board (collectively "the City") relative to the construction of a pedestrian bridge connecting Lincoln Park and Kamm Island. Following a bench trial, the trial court determined that the City had taken property interests belonging to CTC and the Owners without just compensation. Subsequently, a jury trial was held on the issue of damages, and the jury returned a verdict of zero damages. In this appeal, Owners appeal the damages verdict and resulting judgment in favor of the City, and the City cross-appeals the decision that a taking occurred. We consolidate and restate the issues raised by the parties as follows:

I. Whether the trial court erred when it determined that the construction of the pedestrian bridge constituted a taking.

II. Whether riparian rights in Indiana include the right to an unobstructed view of the body of water that created those riparian rights.

III. Whether the trial court erred when it instructed the jury that it should not consider any loss of view when determining damages caused by the taking.

We affirm.

## FACTS AND PROCEDURAL

## HISTORY[1]

In or around May 1999, a plan for the redevelopment of the former Uniroyal site in Mishawaka, Indiana, referred to as the Riverwalk Project, was submitted to the City. The plans included the construction of a pedestrian footbridge across the St. Joseph River to connect City-owned Lincoln Park to City-owned Kamm Island. Kamm Island is located entirely within the St. Joseph River and is separated from the south shore of the river by a channel (the "Channel").

Owners each own a condominium unit in the Schellinger Square building, which is situated at an angle along the St. Joseph River and the Channel. CTC is the condominium association for the Schellinger Square building and owns the common area surrounding the townhomes. Lincoln Park is immediately west of the CTC common area property.

*Appellees' Br. at 3; Appellants' App. at 59.*

In September 2002, CTC and Owners (collectively "Landowners") filed a complaint, later amended, for inverse condemnation, nuisance, and anticipatory trespass for the construction of the pedestrian bridge between Lincoln Park and Kamm Island. Contemporaneously with filing their complaint, Landowners moved for a preliminary injunction to enjoin the construction of the bridge. Following a November 2002 hearing on the preliminary

injunction, the trial court issued findings of fact and conclusions thereon on December 16, 2002, which denied the request for an injunction because, among other reasons, the Landowners had an adequate remedy at law through inverse condemnation proceedings. The December order also concluded, "This Court cannot create a right to a view ... so as to enjoin the otherwise lawful construction of the proposed bridge on defendants' property." *Appellants' App.* at 67.

In December 2003, the City proceeded with the construction of the bridge, which is approximately 140 feet long, seven feet high, twelve feet wide, and is roughly parallel to the waterfront side of the condominium building. *Id.* at 76; *Appellants' Br.* at 8.

In February 2004, the trial court held a bench trial on the issue of whether a taking had occurred when the City built the bridge. By order of May 27, 2004, the trial court issued findings of fact and conclusions of law and determined that the City had taken Landowners' riparian rights without just compensation as required by the Indiana and United States Constitutions. The order included the following language:

> Considering all the rights of riparian owners and all the riparian rights of these plaintiffs, there has been a sub-

1. In preparing this opinion, we note that both parties cited to documents that are not included in the record before us. For instance, Appellants' Reply Brief (at p. 2) refers to the fact that Appellees filed a "partial transcript" of a February 24, 2004 hearing; however, we have not seen any such transcript, nor does the clerk's docket for the court of appeals reflect that Appellees filed any transcript at all. The same page of the Reply Brief also refers to "Appellees' App. at 42"; however, Appellees did not file any separately-bound appendix. Appellees likewise cited to nonexistent documents; for instance, their brief (at pp. 2–4, 10, 16) refers and cites to various transcript pages that concerned such things as the Owners' view of the river before and after the bridge was built. However, the only Transcript filed in this appeal by either party was a portion of the October 5, 2006 hearing that covered argument concerning the jury instructions on the issue of damages and does not represent Appellees' factual citations. For obvious reasons, the parties' inconsistencies caused some confusion and hampered our review of the record as we attempted to sort out the facts and supporting citations.

stantial loss in value based upon the loss of view and the loss of free use and enjoyment of the property, including the right to ingress and egress, the right to construct a pier, wharf or boat dock and the right to boat and fish in the river

*Id.* at 76–77.[2]

The City filed a motion to reconsider, arguing not only that no taking had occurred, but also that Indiana does not recognize a right to a view as part of the bundle of riparian rights belonging to a landowner along a river. The trial court granted the motion to reconsider in part, changing only its ruling with respect to the existence of a right to a view. The relevant portion of the order stated:

> Although a right to a view may exist in Indiana for riparian right owners, it is best left to an appellate court to pronounce that right and to that extent the order of May 24, 2004 should be modified.

*Id.* at 15. Although the City again moved to reconsider, the trial court denied the motion.

Thereafter, the trial court issued its instructions to previously-appointed appraisers and directed the appraisers to assess the amount of just compensation owed to the Landowners as a result of the taking of the rights as determined by the May 24 and December 31 rulings. The appraisers later submitted a Report of Appraisers ("Report") to the court determining that the damage to the Landowners for the loss of their riparian rights was $144,500. All parties filed exceptions to the Report and demanded a jury trial on the issue of damages.

On October 4, 2006, a jury trial commenced. The sole issue for consideration was the amount of damages, if any, the Owners were entitled to recover because of the taking by the City. *Tr.* at 5. The following was one of the final instructions that the trial court read to the jury:

> If proved by a preponderance of the evidence, damages must be confined to the loss of riparian rights and/or the loss of free use and enjoyment of the Plaintiffs' property. As such, the Plaintiffs' loss of view, if any, shall not be considered by you, the Jury, in awarding damages, if any, to the Plaintiffs.

*Id.* at 6. Counsel for Landowners objected to the instruction on the basis that "there was no evidence nor claim that the loss of view was an element of damages. Therefore, to instruct the Jury that it is not an element of damages is outside the issues and evidence in the case." *Id.* at 29.

Both parties now appeal.

## DISCUSSION AND DECISION

Because all the issues of this case emanate in some fashion from the concept of riparian rights (i.e., whether any were taken without just compensation, whether they encompass the right to an unobstructed view, and whether a limiting jury instruction involving their scope was erroneous), a general overview of riparian rights is warranted before proceeding to address the specific issues presented.

### I. Introduction to Riparian Rights

■ Generally, a property owner whose property abuts a lake, river, or stream possesses certain riparian rights associated with ownership of such a property. *Parkison v. McCue,* 831 N.E.2d 118, 128 (Ind.Ct.App.2005), *trans. denied; see also Watson v. Thibodeau,* 559 N.E.2d 1205, 1208 (Ind.Ct.App.1990) (riparian

**2.** The Chronological Case Summary states that the May 2004 order was interlocutory.

*Appellants' App.* at 4.

rights are appurtenant to the shore land owned in fee title); *Brown v. Heidersbach,* 172 Ind.App. 434, 440, 360 N.E.2d 614, 619 (1977) (riparian owner acquires his rights to the water from his fee title to the shore land). The term "riparian rights" indicates a bundle of rights that turn on the physical relationship of a body of water to the land abutting it. ROBERT E. BECK, WATERS AND WATER RIGHTS § 6.01(a) at 6–7 (2001). Riparian rights are special rights pertaining to the use of water in a waterway adjoining the owner's property. 78 Am.Jur.2d *Waters* § 30 (2002). Riparian rights of the owners of lands fronting navigable waters are derived from common law as modified by statute. 65 C.J.S. *Navigable Waters* § 82 (2000). According to some authorities, riparian rights do not necessarily constitute an independent estate and are not property rights *per se;* they are merely licenses or privileges. *Id.* Stated differently, they constitute property rights of a qualified or restricted nature. *Id.*

## II. Whether the Pedestrian Bridge Constituted a Taking

In its cross-appeal, the City argues that the trial court erred when it determined that a taking had occurred when the City built the bridge completely on City-owned property. Both the Indiana and United States Constitutions prohibit the taking of private property for a public purpose without just compensation. The Fifth Amendment to the United States Constitution ("Takings Clause") provides, "[N]or shall private property be taken for public use, without just compensation." Similarly, Article I, Section 21 of the Indiana Constitution reads, "No person's particular services shall be demanded, without just compensation. No person's property shall be taken by law, without just compensation; nor, except in the case of the State, without

such compensation first assessed and tendered."

Generally, riparian rights are property rights that cannot be constitutionally taken without just compensation. 29A C.J.S. *Eminent Domain* § 77 (2007). A taking or destruction of, or any actual and material interference with, riparian or other water rights that causes special injury to the owner is grounds for the recovery of compensation under eminent domain provisions. *Id.* at § 94. The term "property" as used in the Takings Clause includes the entire group of rights inhering in a citizen's ownership. *McNamara v. City of Rittman,* 107 Ohio St.3d 243, 838 N.E.2d 640, 645 (2005). Rights appurtenant to property are protected by the Takings Clause from governmental invasion, and water rights are appurtenant to title in real property. *Id.* A riparian landowner does not own the water in a stream that runs along his property, but he does own the right to the reasonable use of the stream as part of the title to his real estate. *Id.* Where the state makes an improvement that destroys riparian rights, the owners are entitled to compensation for the loss suffered. *Id. See also Mumaugh v. McCarley,* 219 Mich.App. 641, 558 N.W.2d 433, 435 (1996) (riparian rights involve property rights that, if interfered with by government, require the payment of just compensation).

Here, the City is challenging the trial court's May 27, 2004 findings of fact and conclusions thereon (as modified by the December 31, 2004 findings and conclusions), which determined that the City took an interest in Landowners' property, namely, their riparian rights, including the right to ingress and egress, the right to construct a pier, wharf, boat or dock, and the right to boat on and fish in the river. *Appellants' App.* at 15, 72, 76–77. The trial court also found that the interference

with Landowners' riparian rights caused a loss in value to the property. In particular, the City claims that the trial court's determination was in error because: (1) the bridge was built entirely on City-owned land, and, therefore, the City did not physically take any real property; (2) the bridge did not substantially interfere with Landowners' riparian rights; and (3) the bridge did not diminish the value of Landowners' properties. The City also notes that its riparian rights are equal to Landowners' riparian rights, and to the extent that they cross or overlap at some point, there is no reason its rights should be subordinate to those of Landowners'.

In this case, the trial court's May 27, 2004 order consisted of findings of fact and conclusions thereon. We will not disturb the trial court's findings of fact and conclusions unless they are clearly erroneous. Ind. Trial Rule 52(A); *Ind. Dep't of Natural Res. v. Lick Fork Marina, Inc.*, 820 N.E.2d 152, 156 (Ind.Ct.App.2005), *trans. denied, cert. denied.* When a trial court has entered findings of fact and conclusions, its judgment is clearly erroneous only if its findings of fact do not support its conclusions, or its conclusions do not support its judgment. *Id.* (citing *Lloyd v. Lloyd*, 755 N.E.2d 1165, 1167 (Ind.Ct.App. 2001)); *Bussing v. Ind. Dep't of Transp.*, 779 N.E.2d 98, 102 (Ind.Ct.App.2002), *trans. denied* (2003) (trial court's judgment is clearly erroneous if it is unsupported by the findings and the conclusions which rely upon those findings). Findings are clearly erroneous when the record contains no facts to support them either directly or by inference. *Bussing*, 779 N.E.2d at 102. In determining whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom. *Id.* at 103. We will neither reweigh evidence nor judge the credibility of witnesses. *Id.*

■ The City argues that the evidence was insufficient to establish that "an actual taking has occurred." *Appellees' Br.* at 4, 6–7. We refer the City to Indiana Appellate Rule 9(F)(4):

The Notice of Appeal shall designate all portions of the Transcript necessary to present fairly and decide the issues on appeal. If the appellant intends to urge on appeal that a finding of fact or conclusion thereon is unsupported by the evidence or is contrary to the evidence, the Notice of Appeal shall request a Transcript of all the evidence.

In this case, the City did not provide us with a transcript of the February 26, 2004 bench trial, upon which evidence the trial court determined that a taking had occurred. The only transcript included in the record before us is a limited portion of the subsequent jury trial on damages that consists of the trial court's instructions to the jury and counsels' arguments to the court on those instructions. Accordingly, we do not know what evidence was presented on the taking claim, nor whether it supports the trial court's findings.

■ In *In re Walker*, 665 N.E.2d 586, 588 (Ind.1996), our Supreme Court noted that the "failure to include a transcript works a waiver of any specifications of error which depend upon the evidence." Here, the City's claimed error is that the evidence does not support the court's determination that the bridge caused a taking. Because the City did not provide us with the transcript as required by Ind. Appellate Rule 9(F)(4), that argument is waived. *Fields v. Conforti*, 868 N.E.2d 507, 511 (Ind.Ct.App.2007) (arguments that depend upon evidence presented at trial will be waived). Waiver notwithstanding, the City further failed to meet its burden to establish that the trial court's judgment was clearly erroneous. Accordingly, we

proceed on the premise that the bridge connecting Lincoln Park to Kamm Island effected a taking of Landowners riparian rights.[3]

### III. Loss of View

Landowners argue that the judgment for the City should be reversed and the case remanded for a new trial on damages in which the concept of loss of view is included as a compensable element of damages. Specifically, they claim that: (1) the bridge caused them to lose their view of the Channel and the St. Joseph River, or some part of it; and (2) that loss of view is included in their riparian rights and is compensable in their inverse condemnation claim.

 Inverse condemnation is a process provided by statute that allows individuals to be compensated for the loss of property interests taken for public purposes without use of the eminent domain process. *See* IC 32–24–1–16 (any person having an interest in property that has been or may be acquired for a public use without the procedures of this article or any prior law followed is entitled to have damages assessed under this article). The owner rather than the condemnor brings the action. There are two stages in an inverse condemnation action. *Bussing*, 779 N.E.2d at 111. The first stage determines whether a compensable taking has occurred. *Id.* At this stage the landowner must show that he has a property interest that has been taken for a public use without having been appropriated pursuant to eminent domain laws. *Id.* If the trial court, acting as finder of fact in the first stage, determines that a taking has oc-

curred, the matter proceeds to the second stage, at which the court appoints appraisers, and damages are assessed. *Id.* The action is not based on tort, but on the constitutional prohibition of the taking of property without just compensation. *Beck v. City of Evansville*, 842 N.E.2d 856, 863–64 (Ind.Ct.App.2006), *trans. denied.*

 A taking can occur where real property is not actually taken. In such a case, it must be found that there is a "substantial interference with private property which destroys or impairs one's free use and enjoyment of the property or one's interest in the property." *Bd. of Comm'rs of Vanderburgh County v. Joeckel*, 407 N.E.2d 274, 278 (Ind.Ct.App.1980). Whether the interference is substantial is a factual question, which must be resolved in each case by the trier of fact. *Mendenhall v. City of Indianapolis*, 717 N.E.2d 1218, 1227 (Ind.Ct.App.1999), *trans. denied* (2000). One who suffers a "mere inconvenience" likely possesses an extraordinarily weak takings claim. *Biddle v. BAA Indianapolis, LLC*, 860 N.E.2d 570, 580 (Ind.2007). A principal consideration in determining whether a taking has occurred is whether the impact of government action "has interfered with distinct investment-backed expectations." *Id.* at 582.

As Landowners assert, the issue for us to resolve "is whether the right to a view is included within [Landowners'] riparian rights." *Appellants' Reply Br.* at 4. Our research of riparian rights revealed the following excerpt, penned by our southern neighbors at the Kentucky Supreme Court that captures the difficulty we encountered

---

**3.** We observe that the City may have admitted that, at least to some degree, the bridge adversely affected Landowners' riparian rights: According to the trial court's December 30, 2004 Finding of Fact number 6, "[T]he city admitted that the bridge was an intrusion and occupation of the area of the river where the plaintiff [sic] have riparian rights that can no longer be fully exercised." *Appellants' App.* at 13.

as we attempted to identify the scope of riparian rights:

[O]ur research leads us immediately to a jungle of confusion and inconsistencies. As proof of this statement, it is written in 93 C.J.S. *Waters* § 6, p. 606, that 'The common-law rules as to riparian rights exist in a number of jurisdictions, but have been modified in some, while in others riparian rights have been abolished or do not exist.'

In Nichols on Eminent Domain, 3d, vol. 2, *Riparian Rights*, § 5.79, p. 223, it is said: 'There is very little uniformity in the decisions as to what constitutes a compensable interference with or destruction of the rights of a riparian proprietor.'

Riparian rights in the various states of this Union have been further confused by public rights and regulations. 65 C.J.S. *Navigable Waters* § 61.

*Com., Dept. of Highways v. Thomas*, 427 S.W.2d 213, 214 (Ky.1967).

■ In Indiana, the rights associated with riparian ownership generally include: (1) the right of access to navigable water; (2) the right to build a pier out to the line of navigability; (3) the right to accretions; and (4) the right to a reasonable use of the water for general purposes such as boating, domestic use, etc. *Parkison*, 831 N.E.2d at 128. *See also* WATER AND WATER RIGHTS § 6.01(a) at 6–7 and 6–8 (bundle of riparian rights includes at least the following rights: access to the water; to build a wharf or pier into the water; to use the water without transforming it; to consume the water; to accretions; and to own the subsoil of nonnavigable streams and other "private waters").

Our General Assembly identified riparian rights in IC 14–29–1–4 as follows:

(a) Subject to subsection (b), a riparian owner of land in Indiana bordering upon a navigable stream may do the following:

(1) Build and maintain:

(A) within the premises bordering on the stream; and

(B) upon the submerged land beneath the water; a pier, wharf, dock, or harbor in aid of navigation and commerce.

(2) Use, occupy, and enjoy the constructed item as appurtenant to the owner's land.

(b) A pier, dock, or wharf may not do any of the following:

(1) Extend into the stream further than is necessary to accommodate shipping and navigation.

(2) Obstruct shipping and navigation.

Whether this statute is a complete definition of riparian rights or is meant only as a limitation on what types of obstructions a riparian owner may place in a stream or river is not clear. However, the statute has been applied to require a landowner to remove his pier when its placement was infringing on his neighbor's pier. *Bath v. Courts*, 459 N.E.2d 72, 76 (Ind.Ct.App. 1984).

■ Although Indiana has not expressly done so, some courts in other states have recognized a riparian right to an unobstructed view as a legally protected use. WATER AND WATER RIGHTS § 6.01(a)(3) at 6–62; *see e.g., Lee County v. Kiesel*, 705 So.2d 1013, 1015–16 (Fla.Ct. App.1998) (loss of view of waterway from landowner's property caused by government bridge was compensable, even though none of landowner's property was taken by bridge, because Florida recognizes right to unobstructed view); *Treuting v. Bridge and Park Comm'n*, 199 So.2d 627, 633 (Miss.1967) (landowner must use land as not to interfere with recognized common law riparian rights of upland owners, such as an unobstructed view and

ingress and egress to and from the water); City of *Ocean City v. Maffucci*, 326 N.J.Super. 1, 740 A.2d 630, 640–41 (1999), *cert. denied* (1999) (in condemnation action, loss of ocean view and access were elements for which damages could be awarded); *DBL, Inc. v. Carson*, 262 Ga. App. 252, 585 S.E.2d 87, 91 (2003) (landowners may bring suit against operators of marina because marina's docks obstructed landowners' view of water and impeded one landowner's access to his boat), *cert. denied* (2003).

Landowners urge us to follow suit and hold that, in Indiana, riparian rights include the right to an unobstructed view of the water creating those riparian rights such that a loss of view is compensable in an inverse condemnation action. After careful consideration, we are unwilling to do so. Deciding the scope of a landowner's view (how high, how far, from what vantage point, etc.), and, if obstructed in some way for some reason, determining how much obstruction is too much, is inappropriate, if not impossible, for this court. The scope of a landowner's view, whether of the water or otherwise, is a policy decision best left to the legislative branch generally and the local zoning authorities specifically, who can determine appropriate and reasonable setbacks, maximum height requirements, and the like, suitable to the plan or design of that particular region, area, or neighborhood. Those authorities, not an appellate court, should decide on proper views over and across neighboring properties and waterways, as they are in the best position to prescribe reasonable restrictions in order to protect people who have paid large sums of money in order to border Indiana's lakes, rivers, and streams. *See generally Comm. for Reasonable Regulation of Lake Tahoe v. Tahoe Reg'l Planning Agency*, 311 F.Supp.2d 972 (D.Nev.2004) (upholding zoning regulations designed to preserve a scenic view); *Bubis v. Kassin*, 323 N.J.Super. 601, 733 A.2d 1232, 1240 (1999) (regulation requiring coastal developer to ensure visual access to sea is not absolute bar to development along coast). To determine the appropriate scope of an owner's view is beyond the role of this court.

Even if we were to recognize a view of the water as a compensable property right, which we do not, we observe that the taking of that right would be subject to the same taking standard as any other property right: Does the loss of view result in "substantial interference with private property which destroys or impairs one's free use and enjoyment of the property or one's interest in the property?" *Joeckel*, 407 N.E.2d at 278. Generally, a "mere inconvenience" is not sufficient. *Biddle*, 860 N.E.2d at 580. Here, according to the trial court's findings, the pedestrian bridge was 140 feet long, seven feet high, and twelve feet wide. While we do not have the benefit of a visual view of the building, according to the record before us, the condominium units were three stories tall. *Appellants' App.* at 12 (court finding that referred to sale of "similar three-story unit") and at 57 (court finding that noted Owners could see over the proposed bridge from the "second or third stories" of their respective condominium units). Under these circumstances, if Owners' view was affected by the pedestrian bridge, the loss of view may not have been substantial. *Biddle*, 860 N.E.2d at 578 (aircraft noise over homes did not effect taking of homeowners' rights as it did not amount to "practical destruction" or "substantial impairment").

### III. Instruction Excluding Consideration of Loss of View

Landowners claim that the trial court erred in instructing the jury that

the right to a view, or more accurately the loss of it, should play no part in its award of damages to the Landowners. Instruction of the jury is left to the sound judgment of the trial court, and our review of a trial court's decisions in this regard is highly deferential: we will not disturb the court's judgment absent an abuse of discretion. *Kostidis v. Gen. Cinema Corp. of Ind.*, 754 N.E.2d 563, 570 (Ind.Ct.App. 2001), *trans. denied* (2002). To find that the trial court abused its discretion by giving an erroneous instruction, we must find that the instructions taken as a whole misstate the law or otherwise mislead the jury. *Id.*

█ In this case, the trial court instructed the jury that damages must be confined to the loss of riparian rights and that loss of view, if any, shall not be considered in awarding damages, if any, to the Landowners. Counsel for Landowners objected, arguing that compensation for loss of view was not an issue to be tried by the jury, because the trial court removed that issue as a matter of law by virtue of its December 2004 order, and, therefore, the instruction was outside the scope of the evidence. The trial court noted the objection for the record, but explained,

> The Court gave this instruction based upon the evidence that was received from a variety of witnesses, including the fact that the Court had to give a curative instruction during opening argument with regard to this very issue; but also that evidence came in from several of the Plaintiffs regarding the natural body of the river, the view of the river, the view from the condominium units themselves; and therefore, the Court believes that the Jury could draw an inference from that testimony regarding the loss of view.

*Tr.* at 29. Noting that there had been trial testimony by a valuation witness whose

testimony implicitly involved the concept of a loss of view, the trial court continued, "So as a result of that, I believe that this instruction was not only appropriate but necessary to prevent confusion to the Jury[.]" *Id.* at 30. Based on the record before us, we agree, and find no error in the trial court's jury instruction. It neither misled the jury nor misstated the law.

Affirmed.

DARDEN, and ROBB, JJ., concur.