**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**JEFFRY G. PRICE**
Peru, Indiana

ATTORNEY FOR APPELLEES:

**WILLIAM F. BERKSHIRE**
Berkshire Law Firm, P.C.
Peru, Indiana

**FILED**
Feb 03 2012, 9:09 am
**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHN D. JENKINS REVOCABLE LIVING TRUST, JOHN D. JENKINS, TRUSTEE, | ) | |
| | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 52A02-1106-PL-00540 |
| | ) | |
| PERU UTILITY SERVICE BOARD, CITY OF PERU and PERU COMMON COUNCIL, | ) | |
| | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE MIAMI SUPERIOR COURT
The Honorable J. David Grund, Judge
Cause No. 52D01-0512-PL-526

**February 3, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

The John D. Jenkins Revocable Living Trust ("the RLT") contains farmland which it rents to a farmer. Adjacent to the RLT's farmland at issue is a housing development, Hilltop Farms L.P. and Hilltop Farms Phase Two (collectively, "Hilltop"). The RLT agreed to allow Hilltop to construct a sewer line on the RLT's farmland. The RLT then granted Hilltop a sanitary sewer line easement, which Hilltop then assigned to the City of Peru Utilities Service Board ("Peru Utilities"). Subsequently the RLT brought suit against Peru Utilities, the City of Peru, and Peru Common Council (collectively, "Defendants"): 1) alleging a taking and seeking damages for inverse condemnation; and 2) seeking a declaratory judgment as to the rights and obligations of the RLT and Defendants with regard to payment of fees and annexation to the City of Peru by anyone tapping into the sewer line. Following a bench trial, the trial court entered findings of fact and conclusions of law, concluded that a taking did not occur, and declined to enter a declaratory judgment order. On appeal the RLT raises three issues, which we restate as two: whether the trial court erred in finding that no taking occurred, and whether the trial court erred in refusing to enter a declaratory judgment order. We conclude that the trial court did not err, and we affirm.

## Facts and Procedural History

In early 2003, Hilltop had problems with its septic system. In February 2003, Bruce Carson, then an employee of Hilltop, spoke with a representative of Peru Utilities regarding plans to construct a sanitary sewer for Hilltop's use and connect it to the Peru municipal sewer system. Representatives of Hilltop negotiated with the RLT's agent and both agreed to

2

the construction of a sewer line on the real property owned by the RLT. In June 2003, the RLT and Hilltop signed an agreement to grant an easement to that effect. See Appellant's Appendix at 61-63 (stating the easement would "run across the southern boundary of the property . . . and then north across the property owned by the [RLT]"). Throughout 2003, Carson consulted an engineer and finalized plans to construct the sewer line. Both Carson and the RLT understood that Hilltop would construct the sewer line and turn over the impending easement to Peru Utilities; accordingly, Peru Utilities was heavily involved in the planning process. Construction of the sewer line began in late 2003 and was completed by January 2004.

In April 2004, the RLT granted to Hilltop the easement and recorded the same. Id. at 14. In addition to an interest in using and maintaining a sewer line, the easement provides that, to the extent the RLT connected to the sewer line, the RLT agrees to pay its own tap fees and expenses associated with that connection. Id. at 16; see id. at 62 (stating the same term in the June 2003 agreement to grant an easement). The easement was established as a covenant running with the land, binding upon grantees and assignees.

In May 2004, Hilltop signed a "DEED OF DEDICATION," in which it dedicated to Peru Utilities "all platted easements for public utilities, physical / mechanical materials relating to the distribution of, operation of and maintenance of a domestic sanitary wastewater infrastructure extension/improvements serving Hilltop L.P. and Hilltop Farms Phases I and II . . . ." Id. at 21. In September 2004, Hilltop assigned the easement to Peru Utilities, which accepted and recorded the assignment. Id. at 18-20.

In December 2005, the RLT filed suit against Defendants seeking damages for inverse condemnation and a declaratory judgment regarding "all rights and liabilities of the parties about or concerning [the] sewer line and its operation." Id. at 252. Following a bench trial, the trial court entered findings of fact and conclusions of law, concluded that a taking did not occur, and declined to enter a declaratory judgment order. The RLT now appeals. Additional facts will be supplied as appropriate.

Discussion and Decision

I. Standard of Review

Our standard of reviewing a trial court's findings and conclusions requested by a party pursuant to Indiana Trial Rule 52(A) is well-settled:

> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.
> When requested, a trial court is required to make complete special findings sufficient to disclose a valid basis under the issues for the legal result reached in the judgment. The purpose of such findings and conclusions is to provide the parties and reviewing courts with the theory upon which the case was decided.

Balicki v. Balicki, 837 N.E.2d 532, 536 (Ind. Ct. App. 2005) (internal quotation and citations omitted), trans. denied.

4

## II. Inverse Condemnation

Inverse condemnation is a statutory process for individuals' compensation for the loss of property interests which were taken for public purposes without the use of eminent domain procedures. Ctr. Townhouse Corp. v. City of Mishawaka, 882 N.E.2d 762, 770 (Ind. Ct. App. 2008), trans. denied; Ind. Code § 32-24-1-16. An inverse condemnation proceeding is comprised of two stages. Mendenhall v. City of Indianapolis, 717 N.E.2d 1218, 1227 (Ind. Ct. App. 1999), trans. denied. First, the landowner must show that he has an interest in land which has been taken for a public use and was not appropriated pursuant to eminent domain laws. Id. At this stage the trial court is tasked with determining whether a compensable taking occurred. If the trial court finds that a compensable taking occurred, then the matter proceeds to a second stage, in which the trial court appoints appraisers and damages are assessed. Id.

The RLT argues the trial court erred in concluding that a compensable taking has not occurred. More specifically, the RLT contends the trial court failed to enter as findings that which the RLT alleges to be undisputed facts. The RLT further contends that, in any event, the trial court's findings lead to the legal conclusion that a compensable taking occurred. This is especially so, argues the RLT, when considering the trial court's findings in combination with the allegedly erroneously omitted findings.

We begin our analysis by recounting what constitutes a compensable taking for purposes of inverse condemnation actions. Acquiring possession of "some physical part of the real estate" constitutes a taking. Taylor-Chalmers, Inc. v. Bd. of Comm'rs of LaPorte

5

Cnty., 474 N.E.2d 531, 532 (Ind. Ct. App. 1985) (citation omitted). In addition, a taking can occur where a substantial interference with the property destroys or impairs one's free use, enjoyment, or interest in the property. Ctr. Townhouse Corp., 882 N.E.2d at 770. The question of whether a particular interference with property interests is substantial is a question of fact for the fact-finder. Id. A taking also includes the "diminution in value" of a landowner's property. Tornatta Investments, LLC v. Indiana Dep't of Transp., 879 N.E.2d 660, 664 (Ind. Ct. App. 2008), trans. denied. A primary consideration in determining whether a taking has occurred is whether the impact of government action has "interfered with distinctive investment-backed expectations." Sagarin v. City of Bloomington, 932 N.E.2d 739, 744 (Ind. Ct. App. 2010) (citations omitted), trans. denied, cert. denied, 132 S. Ct. 117 (2011).

We conclude the trial court did not err in determining there was no taking. The RLT has not shown that there has been a diminution in value of its property. Nor has the RLT shown that the sewer line has interfered with distinctive investment-backed expectations. Although the RLT seems to have suggested at the trial court that the RLT might have considered developing its farmland into residential lots for profit, that plan was only vaguely stated and, even though at least two houses were sold by the time of trial, the RLT does not explicitly contend that the sewer line interferes with that plan. Although a small portion of the property is now not usable for farming, the RLT receives the same rent from the farmer to whom it rents the land. As a result, no part of the record explicitly demonstrates that the presence of the sewer line on the RLT's property has diminished the land's economic value

6

to the RLT to date or is reasonably anticipated to do so in the future. Prior to construction of the sewer line, the RLT's free use, enjoyment, and interest in the property revolved around rental income from a farmer. This rental income has remained the same, and the evidence supports the finding and conclusion that there has not been a substantial interference that would constitute a taking.

While the evidence indicates that some physical part of the real property is not presently usable for farming because of the way that the sewer line was constructed, that portion of real property was rendered useless before Defendants obtained a legal interest in the property. Therefore, it was not "taken." Construction of the sewer line – which was paid for and principally arranged by Hilltop, in consultation with Defendants – began in late 2003 and was completed by January 2004. As of January 2004, the RLT had sole physical possession of the completed sewer line. At that point Defendants had no legal interest in the sewer line and cannot be liable to the RLT for any unauthorized "taking" resulting from the construction of the sewer line.

A few months later, in April 2004, the RLT granted an easement to Hilltop with an understanding that Hilltop would soon dedicate and assign the easement to Defendants. In May 2004, Hilltop in fact did dedicate the easement to Defendants, and in September 2004, Hilltop assigned the easement to Defendants. No part of the trial court's findings of fact, or other facts which the RLT contends were erroneously omitted, indicate that Defendants engaged in any activity that would constitute a taking after it took legal possession of the

7

easement in May or September 2004. Defendants' involvement in planning and facilitating the construction of the sewer line, as detailed in the record, does not affect this determination.

Therefore, because Defendants did not "take" the RLT's real property before it developed a legal interest, nor after it was dedicated and assigned a legal interest, Defendants did not "take" the RLT's property at all.

We also opine on several issues which the RLT contends support its argument that a taking occurred. First, the RLT contends the sewer line was constructed through the middle of the farmland and not along the border, as was allegedly agreed upon. Second, the sewer line was constructed in part too shallow per the agreement and a permit granted by the Indiana Department of Environmental Management, in part above ground, and in part in a way that leads to problematic pooling of surface water, all of which hamper farming. This is especially problematic, the RLT argues, because it was allegedly agreed that farming could continue virtually without disruption. To the extent these are genuine problems for the RLT that were presented at trial, they are problems which arose before Defendants acquired a legal interest in the property.

Third, the RLT argues that when determining whether a taking occurred, it is irrelevant that the RLT continues to receive the same amount of rental income from the farmer as before construction of the sewer line. Rather, the RLT argues, the present inability for the farmer to farm a small portion of the land constitutes a taking. We need not opine on this argument by the RLT because the "taking" of a small portion of property to which the

RLT refers occurred before Defendants acquired a legal (or even trespassory) interest in the property.

The trial court did not err in concluding that Defendants did not take the real property of the RLT.

### III. Declaratory Judgment

In the RLT's appellate statement of the issues, it challenges the trial court's refusal to enter a declaratory judgment: "Has the court failed to make findings of fact and conclusions as to [the RLT]'[s] request for declaratory judgment?" Appellant's Brief at 1. A cursory review of the trial court order leads to a quick response – no, the trial court did not fail to make findings of fact and conclusions of law regarding the RLT's request for declaratory judgment. The trial court's findings and conclusions thereon span pages four through six of the trial court order. See Appellant's App. at 233-35.

To the extent the RLT argues the trial court erred in refusing to enter a declaratory judgment regarding payment of fees and annexation to the City of Peru by anyone tapping into the sewer line, as alleged in its complaint, the RLT fails to articulate a cogent argument or citations to legal authorities or portions of the record in support of such an argument. Appellate Rule 46(A)(8)(a), regarding arrangement and contents of the argument section of an appellant's brief, requires "the contentions of the appellant on the issues presented[] [be] supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix . . . relied on . . . ."

9

As noted, the RLT fails to even articulate this precise challenge in its statement of the issues. In the argument section of its appellant's brief, it does not expressly address this challenge at all. In its reply appellate brief, the RLT expands this argument to about one page of text, but even this portion fails to clearly explain its argument or include cogent reasoning upon which we may conclude that the trial court erred.

Because a quick glance at the trial court order leads us to deny the RLT's appellate challenge as articulated, and because the RLT fails to cogently explain its appellate argument regarding a more sophisticated challenge, if any, we conclude the trial court did not err in refusing to enter a declaratory judgment.

## Conclusion

The trial court did not err in finding that no taking occurred or in refusing to enter a declaratory judgment order. Therefore we affirm.

Affirmed.

NAJAM, J., and VAIDIK, J., concur.