

**FILED**

Jun 16 2023, 9:31 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Kevin E. Steele
Burke Costanza & Carberry LLP
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE,
TOWN OF OGDEN DUNES
BOARD OF ZONING APPEALS

Charles F.G. Parkinson
Julie A. Paulson
Harris Welsh & Lukmann
Chesterton, Indiana

ATTORNEYS FOR APPELLEES,
DAVID AND CHERYL TARPO

John E. Hughes
Lauren K. Kroeger
Hoeppner Wagner & Evans LLP
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Greg and Robin Shinall,

*Appellants-Petitioners*

v.

Board of Zoning Appeals for
Town of Ogden Dunes, Indiana;
David and Cheryl Tarpo,

*Appellees-Respondents.*

June 16, 2023

Court of Appeals Case No.
22A-PL-3098

Appeal from the Porter Superior
Court

The Honorable Michael A. Fish,
Judge

Trial Court Cause No.
64D01-2206-PL-5496

**Opinion by Judge Pyle**

Chief Judge Altice concurs. Judge Riley dissents.

**Pyle, Judge.**

## Statement of the Case

Greg Shinall and Robin Shinall ("the Shinalls"), appeal the trial court's grant of the motion to dismiss their petition for judicial review in favor of David Tarpo and Cheryl Tarpo ("the Tarpos"), and the Board of Zoning Appeals for the Town of Ogden Dunes ("BZA") (collectively, "the Defendants").

We reverse and remand.

## Issue

Whether the trial court erred in granting the Defendant's motion to dismiss the Shinalls' petition for judicial review based on a lack of standing.

## Facts

Consistent with our standard of review, we take the allegations made in the petition as true. The Shinalls own a home, which they purchased in 2005, located at 3 Cedar Trail, Ogden Dunes, Indiana. The Shinalls' home is located on a hill. The Tarpos own property, which they purchased in 2015, located at 58 Shore Drive in Ogden Dunes. The Tarpos' property is on the south shore of Lake Michigan. The Shinalls' home is almost directly south of the Tarpos' property, such that the Shinalls have a view of Lake Michigan from their home over the roof line of the Tarpos' existing home.

The Ogden Dunes Zoning Code ("Zoning Code") limits the height of residential buildings to thirty feet. Desiring to build a new 6,500 foot home on their property, in 2022, the Tarpos petitioned the BZA for a number of

variances, only one of which is the subject of the instant appeal, namely, a variance of the residential building height restriction from thirty feet to thirty-nine feet. In May 2022, the Shinalls received notice that the Tarpos had applied for the height variance. On June 9, 2022, a public hearing was held on the Tarpos' application, at which the Shinalls argued against the variance. At the conclusion of the public hearing, the BZA approved the height variance.

On June 28, 2022, the Shinalls filed their Verified Petition for Review of Zoning Decision in which they made the following relevant allegations:

> 9. The [Shinalls] reside and own the property located at 3 Cedar Trail, Ogden Dunes, Indiana 46368 . . . Pursuant to Indiana Code 36-7-4-1603(2), they have standing to bring this Petition because they are persons aggrieved by the zoning decision and they participated in the board hearing that led to the decision by (A) appearing at the BZA hearing on June 9, 2022, in person and presenting relevant evidence . . . and (B) filing with the BZA a written opposition statement setting forth facts and opinions relating to the request for variance.
>
> * * *
>
> 28. The Tarpos' property is on the south shore of Lake Michigan. Petitioners reside at 3 Cedar Trail, Ogden Dunes, which is almost directly south of the Tarpos' property. Petitioners enjoy excellent, elevated lake views, including views over the roof line of the Tarpos' current house. If the Tarpos are permitted to construct a house higher than the 30-foot height limitation in the Zoning Code, Petitioners' lake views will be substantially reduced, which will interfere with their use and enjoyment of their property.

29. The variance not only will substantially and adversely affect Petitioners['] use and enjoyment of their property, but it also will also affect the value of their property. The negative impact on the value is both obvious and readily confirmable by comparing the valuations of the properties with lake views to those without lake views. One real estate expert, Andy Krause (principal data scientist at Greenfield Advisors, a real-estate research company) estimates that a house like Petitioners', on a hill with a largely unobstructed water view, is worth significantly more than a comparable house without a water view: "A home partway up a hill with a partially obstructed water view over neighbors' rooftops could increase the overall price by 10 to 30%" and "the same home, in the same location, with an unobstructed view" could increase the price by "30-50%." Based on this research—and common knowledge—Petitioners' current lake view significantly enhances the value of our property, and anything that reduces that lake view would reduce the value accordingly.

30. Several other neighboring properties on Cedar Trail and the south side of Shore Drive also have lake views that will be obstructed or reduced if the Tarpos are allowed to construct a 39-foot house despite the 30-foot height limit in the Zoning Code (e.g., 1 Cedar Trail, 5 Cedar Trail, 57 Shore Drive, and 61 Shore Drive).

* * *

32. All five of the neighboring property owners whose lake views, enjoyment, use and values will be most affected by the variance either joined Petitioners' Opposition (1 Cedar Trail, 3 Cedar Trail, 61 Shore Drive, and 5 Cedar Trail) or submitted their own written objection to the requested variance (57 Shore Drive). In addition, several other neighboring property owners and Ogden Dunes residents also submitted written objections to the request variance.

33. Thus, all of the neighboring property owners, whose "use and value" would be "adversely affected" and whose interests the BZA is required to consider, respect and protect under the governing variance standards (Zoning Code § 152.204(E)(2)(c)), submitted objections to the proposed variance.

(Appellants' App. Vol. II, pp. 15-16, 23-24) (footnotes omitted). The Shinalls argued, among other things, that the BZA's decision should be set aside because it was inconsistent with the Zoning Code's standards, it was unsupported by the evidence, and because it was arbitrary, capricious, and an abuse of the BZA's limited discretion. As required by statute, the Shinalls filed a certified copy of the BZA record of proceedings with their Petition for Judicial Review.

[6] On September 23, 2022, the Defendants filed their Joint Motion to Dismiss for lack of standing pursuant to Indiana Trial Rule 12(B)(6), along with a memorandum of law in support. The Defendants contended that the Shinalls had no legally protected right to an unobstructed lake view under Indiana common law and that "[a]ny right of [the Shinalls] to an unobstructed view of the lake flows from the Ogden Dunes zoning ordinance and height restrictions in the ordinance." (Appellants' App. Vol. III, pp. 156-57). In their response to the Defendants' Motion to Dismiss, the Shinalls contended that the Defendants had conceded that the Zoning Code furnished them with a legally protected interest in the view of the lake from their home. On November 3, 2022, the trial court held a hearing on the Defendants' motion at which no evidence was heard.

[7] On December 15, 2022, the trial court issued its Order, dismissing the Shinalls' Petition for Judicial Review due to lack of standing. The trial court did not enter findings of fact in support of its ruling. However, citing *Bagnall v. Town of Beverly Shores*, 726 N.E.2d 782 (Ind. 2000) and *EP MSS LLC v. Merrillville Bd. of Zoning Appeals*, 192 N.E.3d 981 (Ind. Ct. App. 2022), *trans. denied*, the trial court concluded that the "Shinalls are not aggrieved by any perceived hindrance to their prospective lake views. Thus, they cannot maintain standing to pursue judicial review of the BZA's granted height variance." (Appellants' App. Vol. II, p. 10).

[8] The Shinalls now appeal.

## Decision

[9] The Shinalls argue that the trial court erred by finding that they did not have standing to petition for judicial review of the zoning decision. Specifically, they argue that the facts alleged in their petition satisfy the standing requirements outlined in INDIANA CODE § 36-7-4-1603(a)(2). We agree.

[10] "Motions to dismiss for lack of standing may be brought under Trial Rule 12(B)(6) for failure to state a claim on which relief can be granted." *Thomas v. Blackford County Area Bd. of Zoning Appeals*, 907 N.E.2d 988, 990 (Ind. 2009). The allegations made by the petitioner are taken as true. *Id.* Because the question of standing is purely a legal question, we owe no deference to the trial court's decision, and we review it de novo. *Common Council of Michigan City v.*

*Bd. of Zoning Appeals of Michigan City*, 881 N.E.2d 1012, 1014 (Ind. Ct. App. 2008).

[11]     In order to establish standing to obtain judicial review of a zoning decision, our General Assembly has outlined several preconditions that must be met, one of which is relevant in this case.  A person has standing if:

> (2)     A person *aggrieved* by the zoning decision who participated in the board hearing that led to the decision, either:
>
>> (A)     by appearing at the hearing in person, by agent, or by attorney and presenting relevant evidence; or
>>
>> (B)     by filing with the board a written statement setting forth any facts or opinions relating to the decision.

I.C. § 36-7-4-1603(a)(2) (emphasis added).  The only issue here is whether the Shinalls have established that they are aggrieved by the zoning decision.

[12]     "To be aggrieved, the petitioner must experience a 'substantial grievance, a denial of some personal or property right or the imposition . . . of a burden or obligation.'"  *Bagnall*, 726 N.E.2d at 786 (quoting *Union Tp. Residents Ass'n v. Whitley County Redevelopment Comm'n*, 536 N.E.2d 1044, 1045 (Ind. Ct. App. 1989)).  Further, the zoning decision "must infringe upon a legal right of the petitioner that will be 'enlarged or diminished by the result of the appeal' and the petitioner's resulting injury must be pecuniary in nature.  [A] party seeking to petition for [judicial review] on behalf of a community must show some special injury other than that sustained by the community as a whole."  *Bagnall*,

726 N.E.2d at 786 (quoting *Robertson v. Bd. of Zoning Appeals, Town of Chesterton*, 699 N.E.2d 310, 315 (Ind. Ct. App. 1998)).

[13]     In this case, the trial court based its decision to dismiss the Shinalls' petition for judicial review on two cases: *Bagnall* and *EP MSS LLC*. A review of these two cases reveals that they are easily distinguishable.

[14]     In *Bagnall*, Michael and Deborah Pavel ("the Pavels") owned property in the town of Beverly Shores. They filed three petitions with the Board of Zoning Appeals of the Town of Beverly Shores ("the Board") requesting variances from ordinances so that they could build an addition onto their home and alter the placement of a well. After several hearings, the Board granted the Pavels' petitions. George and Ann Bagnall ("the Bagnalls"), who owned a property three lots away from the Pavels' property, timely petitioned for judicial review of the Board's decisions. In response, the Board filed motions to dismiss, one of which alleged that the Bagnalls lacked standing. After a hearing, the trial court granted the motions to dismiss because "the Bagnalls' lot was not adjacent to or surrounding the Pavel lot in that there [were] three (3) lots of 50 feet each between Lot 7 and Lot 11 for a total separation of 150 feet and that the Bagnalls [did] not have a substantial grievance, a legal right, legal interest or pecuniary injury." *Bagnall*, 726 N.E.2d at 786 (cleaned up). On appeal, our supreme court agreed and held that nothing in the Bagnalls' petition or the evidence presented had shown how the variance would result in infringement of a legal right resulting in pecuniary injury or a special injury beyond that

sustained by the entire community. *Id*. Here, however, the Shinalls' petition contain many allegations as to how they had been aggrieved.

[15] Turning to *EP MSS LLC*, DG Properties ("DG") owned commercial property containing retail establishments and a 69,000 square foot vacant building in the City of Merrillville. At some point, it wanted to convert a portion of its property into a self-storage facility. To facilitate its desire, DG petitioned for a variance because a storage facility was not a permitted use on the property as it was currently zoned. EP MSS LLC ("EP"), which operated a self-storage facility approximately one mile away from DG's property, objected to the proposed variance. After considering the arguments of the parties, the Merrillville Board of Zoning Appeals unanimously recommended approval of DG's petition to the Merrillville Town Council, which subsequently approved the variance. EP filed a petition for judicial review challenging the approval of DG's petition for a variance. EP asserted that it was aggrieved because the "market for self-storage units in Merrillville was already oversaturated and the variance would render existing self-storage businesses less profitable, possibly leading them all to fail." *EP MSS LLC*, 192 N.E.3d at 983. In other words, EP claimed that increased competition would impair its ability to make a profit. DG filed a motion to dismiss claiming EP lacked standing. After a hearing, the trial court granted DG's motion to dismiss. On appeal, another panel of this Court noted that zoning boards are not charged under any Indiana statute with protecting private businesses from competition. *Id*. at 986. We specifically explained that "[r]estricting competition among private businesses does not

serve any of the specifically enumerated purposes in" INDIANA CODE § 36-7-4-601, "and [EP] does not argue that it serves any other purpose this chapter of the Indiana Code is meant to protect." *Id*. As a result, this Court affirmed the trial court's decision. We held that EP had failed to show any pecuniary harm beyond being exposed to competition in our free-market system, which is a risk borne by the community as a whole. *EP MSS LLC*, 192 N.E.2d at 987. Unlike EP, the Shinalls have adequately established the pecuniary harm they would suffer.

[16] Having distinguished these two cases, we turn to an argument made by the Defendants in their appellees' brief. The Defendants argue that our decision in *Center Township Corp. v. City of Mishawaka*, 882 N.E.2d 762 (Ind. Ct. App. 2008), *trans. denied* declined to establish a view of the water as a compensable property right. As a result, the Defendants argue that the Shinalls could not have standing to challenge the variance because they had no legal right to a waterfront view of Lake Michigan from their property. Again, we disagree.

[17] In *Center Township Corp.*, the City of Mishawaka ("the City") initiated a plan to build a pedestrian footbridge from Lincoln Park across the St. Joseph River to Kamm Island, which was owned by the City. At some point, owners of condominiums along the riverfront filed a complaint "for inverse condemnation, nuisance, and anticipatory trespass for the construction of the pedestrian bridge between Lincoln Park and Kamm Island." *Id*. at 766. The condominium owners argued that the construction of the pedestrian bridge interfered with their use and enjoyment of their property, including the view of

the river, to such a degree that it amounted to a taking under the "Indiana and United States Constitutions." *Id*. After a hearing on whether a taking had occurred, the trial court found that the condominium owners had suffered a loss to the value of their property values "based upon the loss of view and the loss of free use and enjoyment of the property, including the right to ingress and egress, the right to construct a pier, wharf or boat dock and the right to boat and fish in the river[.]" *Id*. at 766-767. Arguing that Indiana did not recognize "a right to a view as part of the bundle of riparian rights," the City filed a motion to reconsider.[1] *Id*. at 767. The trial court granted the motion, but only altered its ruling by indicating that the existence of a right to a view for riparian rights "is best left to an appellate court . . . ." *Id*. The trial court then appointed appraisers to "assess the amount of just compensation owed to the [condominium owners] as a result of the taking of" their rights. *Id*. After the report had been issued, all parties objected and demanded a jury trial on damages. A jury trial was held where the sole issue was damages. At the conclusion of the trial, the trial court issued final instructions, one of which stated that damages had to be confined to the loss of riparian rights. However,

---

[1] "The term 'riparian rights' indicates a bundle of rights that turn on the physical relationship of a body of water to the land abutting it. Riparian rights are special rights pertaining to the use of water in a waterway adjoining the owner's property. Riparian rights of the owners of lands fronting navigable waters are derived from common law as modified by statute. According to some authorities, riparian rights do not necessarily constitute an independent estate and are not property rights *per se*; they are merely licenses or privileges. Stated differently, they constitute property rights of a qualified or restricted nature." *Center Townhouse Corp. v. City of Mishawaka*, 882 N.E.2d 762, 768 (Ind. Ct. App. 2008) (citations omitted).

the trial court specifically stated that loss of view should not be considered. The condominium owners objected, and an appeal was taken by all parties.

[18] On appeal, another panel of this Court concluded that a taking had occurred. However, our Court noted that, while riparian rights are defined by INDIANA CODE § 14-29-1-4, it is not clear that this statute is a complete definition. We noted that "other states have recognized a riparian right to an unobstructed view as a legally protected use." *Id*. at 771. The condominium owners urged "us to follow suit," but we declined their invitation. *Id*. at 772. We held that the "scope of a landowner's view, whether of the water or otherwise, is a policy decision best left to the legislative branch generally and the local zoning authorities specifically, who can determine appropriate and reasonable setbacks, maximum height requirements, and the like, suitable to the plan or design of that particular region, area, or neighborhood." *Id*. at 772.

[19] This is exactly what has happened in this case. The Town of Ogden Dunes exercised its policy prerogative and adopted a Zoning Code limiting the height of residential construction to thirty feet. Since 2005, the Shinalls have owned property that has afforded them a view of Lake Michigan over the rooftop of the Tarpos' existing home. The Tarpos sought a variance from the Zoning Code allowing them to build a home exceeding the height restriction. The Shinalls assert that the proposed home would interfere with their use and enjoyment of their property by blocking their view of Lake Michigan.

The Shinalls were required to establish that they had a substantial grievance against the variance. *Bagnall*, 726 N.E.2d at 786. In other words, the Shinalls "must have a legal interest which will be enlarged or diminished by the result of the appeal. In order for a party to be entitled to appeal from a final action, it must appear that it has substantial interest in the subject matter of the litigation and that it is prejudiced or aggrieved from the action from which it seeks to appeal." *Union Tp. Residents Ass'n, Inc.*, 536 N.E.2d at 1045.

Taken as true, the allegations in Shinalls' petition clearly establish that they are aggrieved for purposes of establishing standing to seek judicial review under INDIANA CODE § 36-7-4-1603(a)(2). The Zoning Code established a thirty-foot height restriction for residential construction. The record in this case reveals that for almost two decades the Shinalls have enjoyed a waterfront view of Lake Michigan over the roofline of the Tarpos' existing home. The Shinalls' petition asserted that they have a marketable interest in the property value associated with the waterfront view from with their property. Further, the petition asserts that the proposed variance allowing the Tarpos to build their home would obstruct the Shinalls' view of Lake Michigan, diminishing the property value of the Shinalls' home and the values of adjacent properties. In addition, the facts alleged not only demonstrate a pecuniary injury but establish an injury beyond that to be suffered by the community as a whole. In other words, only the Shinalls and the adjacent property owners would likely suffer from the loss of enjoyment and market value from an obstructed waterfront view of Lake Michigan. As a result, we hold the Shinalls had standing because they had a

substantial grievance with BZA's decision granting a variance to the Tarpos. As a result, the trial court erred in granting the Defendants' motion to dismiss, and we reverse and remand this case for further proceedings.

[22] Reversed and remanded.

Altice, C.J., concurs.

Riley, J., dissents with separate opinion.

**Riley, Judge dissenting.**

[1] I respectfully dissent from the majority's conclusion that the Shinalls have standing to seek judicial review in this matter. Indiana Code section 36-7-4-1603(a)(2) requires that, in order to have standing to contest a zoning decision, a person must be "aggrieved" by that decision. Our supreme court has explained that in order to be "aggrieved" for purposes of establishing standing, the petitioner must allege the denial of some legally protected right, either a "personal or property right", by the zoning authority's decision. *Bagnall v. Town of Beverly Shores*, 726 N.E.2d 782, 786 (Ind. 2000). In EP MSS, cited by the majority, this court examined the nature of EP MSS's claimed injury and found no standing, holding that EP MSS did not have "a legal right to be free from increased competition." *EP MSS LLC v. Merrillville Bd. of Zoning Appeals*, 192 N.E.3d 981, 986 (Ind. Ct. App. 2022), trans. denied. Thus, we have concluded that it is not adequate to confer standing when petitioners seeking judicial review are nearby property owners or even that they assert a pecuniary loss; rather, petitioners must also have a legal right to the interest they claim was injured. See id. The interest the Shinalls claim is injured in this case is their right to a view to Lake Michigan over the roofline of the Tarpos' home. However, we have already concluded in *Center Townhouse Corporation v. City of Mishawaka*, 882 N.E.2d 762, 772 (Ind. Ct. App. 2008), trans. denied, that Indiana does not recognize any common law riparian right of an unobstructed view of water by a landowner.

[2] The majority distinguishes EP MSS merely on the basis that, here, the Shinalls alleged a pecuniary loss, and, citing Center Townhouse Corporation, it holds that the Shinalls' standing issues from the fact that "[t]he Town of Ogden Dunes exercised its policy prerogative and adopted a Zoning Code limiting the height of residential construction to thirty feet." Slip op. at 12. However, if standing is conferred by the existence of a zoning statute itself, there is no limit to who may claim standing to contest a zoning decision. Because the majority's decision today throws open the floodgates of standing and conflicts with Bagnall, EP MSS, and Center Townhouse Corporation, I dissent.