MCNAMARA ET AL. *v*. CITY OF RITTMAN.

HENSLEY ET AL. *v*. CITY OF COLUMBUS ET AL.

[Cite as *McNamara v. Rittman*, 107 Ohio St.3d 243, 2005-Ohio-6433.]

*Property rights – Takings Clause – Procedural and substantive due process – Groundwater rights – Landowners have property interest in groundwater underlying their land – Governmental interference with that right can constitute compensable taking.*

(Nos. 2004-0357 and 2004-0363 — Submitted January 12, 2005 — Decided December 21, 2005.)

ON ORDERS from the United States Court of Appeals for the Sixth Circuit, Certifying Questions of State Law, Nos. 02-3778 and 02-3965.

————————————

**PFEIFER, J.**

Factual and Procedural Background

{¶ 1} The Sixth Circuit Court of Appeals has certified a single question to this court arising from two cases. The question is a general one, so we need not delve deeply into the facts of the cases at issue.

{¶ 2} Both cases involve the effect of construction by governmental entities on the water supplies of individual homeowners. In *McNamara*, the petitioners are homeowners who reside in Sterling, Ohio. In 1973, respondent, the city of Rittman, purchased a tract of land near Sterling for the purpose of drilling three wells on the land to serve Rittman's water needs. Petitioners allege that Rittman's operation lowered their aquifer, causing water shortages and poor quality water. On January 4, 1994, petitioners filed a complaint seeking damages and injunctive relief against Rittman. The trial court granted summary judgment to Rittman. The appellate court affirmed, holding that Rittman was immune from

liability under R.C. Chapter 2744. This court accepted an appeal, but later dismissed the case as having been improvidently allowed. *McNamara v. Rittman* (1998), 82 Ohio St.3d 1414, 694 N.E.2d 76, and 85 Ohio St.3d 1206, 707 N.E.2d 943.

**{¶ 3}** The *McNamara* petitioners filed a complaint in the United States District Court for the Northern District of Ohio on December 7, 2000, seeking relief pursuant to Section 1983, Title 42, U.S.Code, alleging a violation of their due process rights as well as a taking without just compensation. The court did not decide whether the petitioners had a property right in groundwater, but instead granted summary judgment to Rittman based upon the court's holding that petitioners had not filed their case within the applicable statute of limitations.

**{¶ 4}** *Hensley* evolved in much the same way. In *Hensley*, the city of Columbus and others, in order to extend sewer lines, dug a trench up to 60 feet deep near petitioners' property. To keep water out of the trench during construction, groundwater was pumped out from under the petitioners' property. That "dewatering" caused petitioners' wells to go dry.

**{¶ 5}** Petitioners filed a suit in the Franklin County Common Pleas Court on April 21, 1992, alleging that respondents' actions constituted an unreasonable use of their groundwater and that respondents were thus liable for damages pursuant to this court's decision in *Cline v. Am. Aggregates Corp.* (1984), 15 Ohio St.3d 384, 15 OBR 501, 474 N.E.2d 324. Ultimately, the trial court granted summary judgment to respondents based upon sovereign immunity. The court of appeals affirmed; this court declined to grant jurisdiction on petitioners' appeal. *Hensley v. New Albany Co. Ohio Gen. Partnership* (1998), 81 Ohio St.3d 1516, 692 N.E.2d 621.

**{¶ 6}** On September 30, 1999, the petitioners filed a complaint in the United States District Court for the Southern District of Ohio pursuant to Section 1983, Title 42, U.S.Code, alleging a federal taking claim and a procedural and

substantive due process claim. The district court granted summary judgment to respondents, finding that Ohio does not recognize a property interest in groundwater, thus negating any claim of a governmental taking of property.

**{¶ 7}** Both cases were appealed to the Sixth Circuit Court of Appeals. Finding that the issue of whether petitioners have a property right in groundwater is dispositive and noting that this court has yet to address the issue, the court posed an identical certified question in both cases:

**{¶ 8}** "Does an Ohio homeowner have a property interest in so much of the groundwater located beneath the land owner's property as is necessary to the use and enjoyment of the owner's home?"

**{¶ 9}** We agreed to answer the certified question in both cases. 102 Ohio St.3d 1420, 2004-Ohio-2003, 807 N.E.2d 365.

Law and Analysis

**{¶ 10}** We are asked in this case to answer a general question of law, not to resolve the underlying cases. Whether there were takings in these two cases is not for us to decide; corrective measures taken by the cities are likewise irrelevant to our discussion. We are asked a question in the abstract: Whether Ohio recognizes a property right in that amount of groundwater beneath a landowner's property that is necessary to the use and enjoyment of the owner's home. Our response is that Ohio recognizes that landowners have a property interest in the groundwater underlying their land and that governmental interference with that right can constitute an unconstitutional taking.

**{¶ 11}** In *Frazier v. Brown* (1861), 12 Ohio St. 294, this court established an absolute ownership standard for groundwater in Ohio. According to that doctrine, "such water is to be regarded as part of the land itself, to be enjoyed absolutely by the proprietor within whose territory it lies." Id. at 308. The court refused to recognize any rule requiring the sharing of water among landowners overlying a common aquifer. Thus, any owner of property was entitled to use all

the groundwater he could, without regard to how that use affected neighboring landowners. The *Frazier* court set forth two reasons for its holding, which resulted "mainly from considerations of public policy":

{¶ 12} "1. Because the existence, origin, movement and course of such waters, and the causes which govern and direct their movements, are so secret, occult and concealed, that an attempt to administer any set of legal rules in respect to them would be involved in hopeless uncertainty, and would be, therefore, practically impossible. 2. Because any such recognition of correlative rights, would interfere, to the material detriment of the common wealth, with drainage and agriculture, mining, the construction of highways and railroads, with sanitary regulations, building and the general progress of improvement in works of embellishment and utility." Id. at 311.

{¶ 13} *Frazier's* absolute dominion standard stood for over 100 years, until this court adjusted the course of Ohio groundwater law in the watershed case, *Cline v. Am. Aggregates Corp.,* 15 Ohio St.3d 384, 15 OBR 501, 474 N.E.2d 324. *Cline* established that each landowner has property rights with respect to groundwater.

{¶ 14} In *Cline*, this court set out to create a workable standard for the resolution of groundwater disputes in Ohio. To that end, the court adopted the "reasonable use" doctrine applicable to groundwater set forth in 4 Restatement of the Law 2d (1979), Torts, Section 858, which states:

{¶ 15} "A proprietor of land or his grantee who withdraws ground water from the land and uses it for a beneficial purpose is not subject to liability for interference with the use of water by another, unless

{¶ 16} "(a) the withdrawal of ground water unreasonably causes harm to a proprietor of neighboring land through lowering the water table or reducing artesian pressure,

**{¶ 17}** "(b) the withdrawal of ground water exceeds the proprietor's reasonable share of the annual supply or total store of ground water, or

**{¶ 18}** "(c) the withdrawal of the ground water has a direct and substantial effect upon a watercourse or lake and unreasonably causes harm to a person entitled to the use of its water."

**{¶ 19}** The *Cline* standard assumes nonliability – a landowner is able to withdraw as much groundwater as he can put to beneficial use. *Cline* breaks from *Frazier*'s absolute rule as soon as a common user is harmed. Both *Frazier* and *Cline* recognize that aquifers are not neatly contained within property lines and that one landowner's use of water can have a detrimental effect on an adjoining landowner's groundwater supply. However, the *Frazier* court held that what happens below the surface of the land is so unknowable that we cannot determine with any certainty whether one person's use affects another person's use. *Cline* rejects that notion. In *Cline*, this court concluded that the 100 years of science since *Frazier* have enabled us to reliably determine the effect of one landowner's water use on another landowner's property. The court was persuaded by "[o]ther American decisions [that] have recognized that the advancement of scientific knowledge can insure the protection of a landowner's property rights in ground water to the same degree that the riparian doctrine protects the interests of land owners adjacent to a stream." Id., 15 Ohio St.3d at 386, 15 OBR 501, 474 N.E.2d 324. We note that the *Cline* court speaks of protecting a landowner's groundwater "property rights."

**{¶ 20}** *Cline* should thus be read as protecting landowners' property rights in groundwater, rather than limiting them. Through *Cline*, a property owner has a remedy against another property owner with land overlying a common aquifer, if the other landowner's use of the water unreasonably diminishes his water supply. Under *Cline*, a property owner's right to use the water underlying his property is not subject to a neighboring property owner's superior pumping system, as it

would have been under *Frazier*. Instead, a landowner's right to the water underlying his property is protected by law. A property owner has a potential cause of action against anyone who unreasonably interferes with his property right in groundwater. That cause of action arises only from the effect on the landowner's water rights — no other effect on the overlying property is necessary for the cause of action to proceed.

{¶ 21} Respondents argue that although *Cline* established that property owners have the right to the reasonable use of the groundwater beneath their property, they have no right of title, no ownership right, in the water itself. Thus, they argue, the government has not taken anything that the petitioners own.

{¶ 22} We disagree. The title to property *includes* the right to use the groundwater beneath that property. The "reasonable use" standard set forth in *Cline* greatly expanded water rights protection, reflecting the importance of water rights to every piece of property. *Cline* recognizes the essential relationship between water and property and confirms that groundwater rights are a separate right in property. The Restatement section cited in *Cline* "recognizes that the right to withdraw ground water is a property right that may be granted and sold to others." 4 Restatement of Law 2d, Torts, Section 858, Comment *b*. That right is one of the fundamental attributes of property ownership and an essential stick in the bundle of rights that is part of title to property.

{¶ 23} Although a cause of action for unreasonable use of water sounds in tort, it is based upon the property right of the landowner making the claim, much like a claim for trespass. The cause of action "retains the property basis of the common law rules pertaining to ground water." 4 Restatement of Torts, Section 858, Comment *b*.

{¶ 24} "Property" in this context encompasses more than the physical object owned:

{¶ 25} "The term 'property' as used in the Taking Clause includes the entire 'group of rights inhering in the citizen's [ownership].' *United States v. General Motors Corp.*, 323 U.S. 373 [378, 65 S.Ct. 357, 89 L.Ed. 311] (1945). It is not used in the 'vulgar and untechnical sense of the physical thing with respect to which the citizen exercises rights recognized by law. [Instead, it] denote[s] the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it. * * * The constitutional provision is addressed to every sort of interest the citizen may possess.' *Id.,* at 377-378 [65 S.Ct. 357, 89 L.Ed. 311]." (Ellipsis sic.) *PruneYard Shopping Ctr. v. Robins* (1980), 447 U.S. 74, 82, 100 S.Ct. 2035, 64 L.Ed.2d 741, fn. 6.

{¶ 26} In *Smith v. Erie RR. Co.* (1938), 134 Ohio St. 135, 11 O.O. 571, 16 N.E.2d 310, paragraph one of the syllabus, this court held:

{¶ 27} "Under Section 19, Article I, of the [Ohio] Constitution, which requires compensation to be made for private property taken for public use, any taking, whether it be physical or merely deprives the owner of an intangible interest appurtenant to the premises, entitles the owner to compensation."

{¶ 28} Rights appurtenant to property are protected from governmental invasion, and water rights are appurtenant to title in real property. Separate title to the actual groundwater is not required to protect a landowner's use of that water. By way of analogy, a riparian landowner does not own the water in a stream that runs along his property, but he does own the right to the reasonable use of the stream as a part of the title to his real estate. In *State ex rel. The Andersons v. Masheter* (1964), 1 Ohio St.2d 11, 12-13, 30 O.O.2d 6, 203 N.E.2d 325, this court held that "[r]iparian rights are private property within the meaning of the Constitution. Where the state makes an improvement for a purpose other than the improvement of navigation, which destroys riparian rights, the owners of such rights are entitled to compensation for the loss they have suffered."

**{¶ 29}** The United States Supreme Court in *Dugan v. Rank* (1963), 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15, also held that governmental interference with riparian rights constitutes a taking. In *Dugan*, the government's construction of dams upstream severely affected water flow in the San Joaquin River for riparian owners downstream. The court wrote:

**{¶ 30}** "A seizure of water rights need not necessarily be a physical invasion of land. It may occur upstream, as here. * * * [W]hen the Government acted here 'with the purpose and effect of subordinating' the respondents' water rights to the Project's uses 'whenever it saw fit,' 'with the result of depriving the owner of its profitable use, [there was] the imposition of such a servitude [as] would constitute an appropriation of property for which compensation should be made.' *Peabody v. United States,* 231 U.S. 530, 538 [34 S.Ct. 159, 58 L.Ed. 351] (1913); *Portsmouth Co. v. United States* [(1922), 260 U.S. 327] at 329, [43 S.Ct. 135, 67 L.Ed. 287]." *Dugan,* 372 U.S. at 625-626, 83 S.Ct. 999, 10 L.Ed.2d 15.

**{¶ 31}** As quoted above, this court in *Cline* found that "the advancement of scientific knowledge can insure the protection of a landowner's property rights in ground water to the same degree that the riparian doctrine protects the interests of landowners adjacent to a stream." Id., 15 Ohio St.3d at 386, 15 OBR 501, 474 N.E.2d 324. The dark arts theory of *Frazier* – that the movements of groundwater are so mysterious that we should not even try to determine who has rights to the water – has been abandoned. *Cline* held that landowners do have rights to groundwater and that those rights are not so murky that they should be unprotected. They are entitled to protection, as riparian rights are.

**{¶ 32}** Diverse jurisdictions have held that landowners' rights to groundwater are protected from interference by the government. The Supreme Court of Washington in *State by State Hwy. Comm. v. Ponten* (1969), 77 Wash.2d 463, 472, 463 P.2d 150, held that "there is a property right (correlative though it may be) in percolating waters" and that the state was liable for its taking of

8

landowners' percolating waters, i.e. groundwater, when highway construction permitted those waters to escape, causing landowners' wells to either go dry or suffer a reduction in supply. In *Dermody v. Reno* (1997), 113 Nev. 207, 212, 931 P.2d 1354, the Nevada Supreme Court stated that "appurtenant water rights are a separate stick in the bundle of rights attendant to real property. As such, they may be condemned separately." The North Dakota Supreme Court in *Volkmann v. Crosby* (1963), 120 N.W.2d 18, 24, held that "where a landowner has applied percolating subterranean water to reasonable beneficial use on his overlying land and has thereby acquired a vested right to that use, the state may not by subsequent legislation authorize its impairment or destruction without compensation." Likewise, Florida courts have held that governmental interference with an existing use of groundwater is sufficient to state a cause of action for inverse condemnation. *Schick v. Florida Dept. of Agriculture* (Fla.App.1987), 504 So.2d 1318, 1320-1321, relying on *Tequesta v. Jupiter Inlet Corp.* (Fla.1979), 371 So.2d 663.

{¶ 33} Ohio has its own unique water resources and water needs. More than 700,000 Ohioans have their own wells to meet their entire water needs; industry uses more than 240 million gallons of groundwater per day, and Ohio's farmers use approximately two billion gallons of groundwater per year. Ground Water Protection Council*, Report to Congress (2000) (found at http:/www.gwpc.org/gwreport/Acrobat/ohio.pdf).

{¶ 34} Groundwater rights are knowable and protectible. This court in *Cline* established the nature of the right, and Ohio has statutorily defined what constitutes reasonable use. R.C. 1521.17. The well-being of Ohio homeowners, the stability of Ohio's economy, and the reliability of real estate transfers require the protection of groundwater rights. We therefore hold that Ohio landowners have a property interest in the groundwater underlying their land and that

governmental interference with that right can constitute an unconstitutional taking.

RESNICK, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in judgment only.

———————————

**MOYER, C.J., concurring in judgment only.**

{¶ 35} I concur in the response of the majority to the extent that it holds that an Ohio landowner has a constitutionally protected property interest in groundwater that regularly occupies an aquifer underlying his land. The majority concludes that a property interest in groundwater originates from the reasonable-use component set forth in 4 Restatement of the Law 2d, Torts (1979), Section 858, specifically, subsection (1)(a). Though I agree with the determination that a property interest exists, I write separately because I do not believe that it originates from the reasonable-use rule. Instead, I believe that a property interest in groundwater originates from the correlative-rights component of Section 858 found in subsection (1)(b). Section 858(1)(b) provides that a landowner whose withdrawal of groundwater interferes with the use of water by another is not subject to liability unless the withdrawal "exceeds the proprietor's reasonable share of the annual supply or total store of ground water." It was the recognition of correlative rights in respect to groundwater that created a property interest in groundwater.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

———————————

Steve J. Edwards, for petitioners.

Baker, Dublikar, Beck, Wiley & Mathews, Jack R. Baker, and Mel L. Lute Jr., for respondent city of Rittman.

Richard C. Pfeifer Jr., Columbus City Attorney, Daniel W. Drake, Chief Counsel, Columbus City Attorney and Patricia A. Delaney, Assistant City Attorney, for respondent city of Columbus.

Reminger & Reminger and Kevin Foley, for respondent Kokosing Construction Co., Inc. in case No. 2004-0363.

Harris, Turano & Mazzo and Kenneth E. Harris, for respondent Tata Excavating in case No. 2004-0363.

Freund, Freeze & Arnold and Carl A. Anthony, for respondent Contract Dewatering Services, Inc. in case No. 2004-0363.

Brooks & Logan Co., L.P.A., and J. Anthony Logan, in support of petitioners, for amicus curiae Farmer's Educational & Cooperative Union of America, Ohio Division.

Barry M. Byron, Stephen L. Byron, and John Gotherman, in support of respondents, for amicus curiae Ohio Municipal League.

_____